**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

| | |
|---|---|
| CHRISTINE L.  SEED,<br>          Appellant, | DOCKET NUMBER<br>SF-0432-12-0736-I-1 |
| v. | |
| DEPARTMENT OF ENERGY,<br>          Agency. | DATE: August 15, 2014 |

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Franklyn J. Fragomene, Jr., Esquire, Washington, D.C., for the appellant.

Donna A. Oden-Orr, Esquire, Portland, Oregon, for the agency.

**BEFORE**

Susan Tsui Grundmann, Chairman
Anne M. Wagner, Vice Chairman
Mark A. Robbins, Member

**FINAL ORDER**

¶1      The agency has filed a petition for review of the initial decision, which reversed its action removing the appellant under 5 U.S.C. chapter 43.  Generally, we grant petitions such as this one only when:  the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous

---

[1]  A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law.  Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions.  In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law.  *See* 5 C.F.R. § 1201.117(c).

interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. *See* Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, and based on the following points and authorities, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review and AFFIRM the initial decision, which is now the Board's final decision. 5 C.F.R. § 1201.113(b).

¶2 The agency removed the appellant from her GS-6 Library Technician position, effective April 29, 2011, under chapter 43. Initial Appeal File (IAF), Tab 9 at 162-68. The agency determined, at the conclusion of the appellant's 90-day Performance Improvement Plan (PIP), that her performance did not rise to the level of "meets expectations" in two Critical Elements: (1) Maintain Bonneville Power Administration (BPA) Library Collection; and (2) Effective Teamwork and Communication.[2] *Id.* at 4-10, 163-68.

¶3 The appellant timely[3] filed an appeal with the Board regarding her removal and requested a hearing. IAF, Tab 1. She alleged that: (1) the PIP was not properly drafted with measurable outcomes and failed to take into consideration her need for a reasonable accommodation; and (2) her removal was motivated by age and disability discrimination. *Id.* After holding a hearing, the administrative

---

[2] The appellant's performance plan specified only three performance levels: unacceptable, meets expectations, and significantly exceeds expectations. IAF, Tab 9 at 37-46.

[3] The appellant first filed a formal equal employment opportunity complaint, and the final agency decision in that matter was issued on July 23, 2012. IAF, Tab 1 at 7, 39.

judge issued an initial decision reversing the agency's removal action. IAF, Tab 21, Initial Decision (ID). The administrative judge found that the agency's performance standards were valid but that the agency failed to establish by substantial evidence that the appellant's performance during the PIP was unacceptable under those standards in either Critical Element at issue. ID at 8-22. The administrative judge also found that the appellant failed to prove her affirmative defenses of age and disability discrimination. ID at 22-29.

¶4 The agency has filed a petition for review, arguing that it proved by substantial evidence that the appellant failed both Critical Elements at issue. Petition for Review (PFR) File, Tab 1. The appellant filed a response in opposition and the agency submitted a reply. PFR File, Tabs 3-4.

¶5 As an initial matter, in its petition for review, the agency repeatedly argues that proof of one "specification," i.e., one instance of the appellant failing to properly complete any one task assigned under one of the required Improvements set forth in the PIP, is sufficient to sustain its "charge," i.e., failure of a required Improvement under the PIP. *See, e.g.*, PFR File, Tab 1 at 17-18. According to the agency, failure of any one required Improvement under the PIP, all of which were "important" to the Critical Elements, constitutes failure of a Critical Element. *See, e.g.*, *id.*

¶6 The agency seems to be applying a 5 U.S.C. chapter 75 analysis, although it brought its action under chapter 43. It is true that, under chapter 75, where more than one event or factual specification supports a single charge, proof of one or more, but not all, of the supporting specifications is sufficient to sustain the charge. *Burroughs v. Department of the Army*, 918 F.2d 170, 172 (Fed. Cir. 1990). Under chapter 43, however, where an employee's performance is unacceptable on one or more, but not all, components of a Critical Element, the agency must show by substantial evidence that his performance warranted an unacceptable rating on the element as a whole. *Lee v. Environmental Protection Agency*, 115 M.S.P.R. 533, ¶ 36 (2010). Applying the agency's logic, if the

appellant did not properly complete even one task assigned during the PIP, regardless of the task's relation to her position and the Critical Elements as a whole, she would fail an Improvement and, therefore, a Critical Element, thus justifying her removal. We reject this argument. It is not sufficient for the agency to assert that the appellant failed a Critical Element because of her failure to properly complete a single task, without providing any explanation of how the task itself, not simply the corresponding Improvement, warranted failure of the Critical Element as a whole if not done properly.

¶7      We also reject the agency's argument that the administrative judge erred in finding that the agency "did not communicate to the appellant the standard of measure for evaluating her assignments on any particular Improvement, or whether difficulty in one particular area or task would preclude a finding that she had successfully completed the PIP." PFR File, Tab 1 at 18; ID at 15. Although the agency stated that the appellant must demonstrate the required Improvements in order for her performance to meet expectations in the Critical Elements, it did not inform her that her failure of just one task assigned under any Improvement would result in her failure of the PIP. We also note that the PIP did not identify which Improvements related to which Critical Element. IAF, Tab 9 at 175-76.

Critical Element 1

¶8      The agency found that the appellant failed Critical Element 1 (Maintaining BPA Library Collection) because she did not satisfy two required Improvements set forth in the PIP. IAF, Tab 9 at 4-6. Specifically, the appellant was instructed to: (1) dispose of library materials within a few days of being instructed to do so, rather than hoarding them; and (2) perform the basic functions of her position in a largely independent manner. *Id.* at 175. Concerning hoarding materials, the agency found that the appellant removed blank, but unusable, patron survey cards from the recycling bin and placed them in a stack with usable survey cards. *Id.* at 4-5. As to performing her duties in an independent manner, the agency found

that the appellant failed to follow written instructions for: (1) weeding newsletters from the library collection, in that she discarded newsletters she was instructed to retain, resulting in a loss of approximately $14,000 worth of materials; and (2) completing a shelf shift, which involved condensing library materials onto fewer shelves, because she had to be reminded several times to fill the top shelves for space reasons.[4] *Id.* at 5-6.

¶9    The administrative judge found that the appellant's retrieving survey cards from the recycling bin did not indicate that she was hoarding library materials of which she had been instructed to dispose because: (1) the appellant's supervisor did not instruct her to dispose of the cards; (2) there was no evidence that the appellant knew that her supervisor had discarded the cards because they were unusable; and (3) this one instance of the appellant retrieving something from the recycling bin did not constitute hoarding. ID at 10-11. The administrative judge found that, although the appellant began the shelf shift project leaving the top shelves empty, this was only because the top shelves had always been left empty during previous shelf shifts and that the appellant correctly and timely completed the project after her supervisor provided her with the new instruction to fill the top shelves. ID at 12-13. Thus, the administrative judge concluded that the appellant completed the shelf shift project in a largely independent manner. ID

---

[4] The agency also found, regarding Critical Element 1, that the appellant: (1) failed to follow library retention patterns by unnecessarily retaining an extra year's worth of various publications; (2) failed to timely replace an ink toner cartridge as instructed, including failing to have extra cartridges in stock at the library; and (3) informed her supervisor that she would keep surplus toner in her work area, which was contrary to an established procedure of keeping printer supplies in a central supply cabinet. IAF, Tab 9 at 5-6. The administrative judge found that these examples were not indicative of poor performance in Critical Element 1 because: (1) the appellant retained materials as approved by her former supervisors for 19 years with no change in instructions; (2) maintaining office supplies, including toner, was listed in the appellant's performance plan under a separate, noncritical element; and (3) replacing toner correctly and efficiently has little to do with maintaining a library collection. ID at 13-15. On review, the agency does not challenge these findings, as they relate to Critical Element 1.

at 12-13. The administrative judge also found that the appellant improperly discarded newsletters when performing the newsletter weeding task, as specified in the agency's proposal notice. ID at 11-12. The administrative judge concluded that, notwithstanding the appellant's serious error in the newsletter weeding project, the agency failed to prove by substantial evidence that the appellant's performance in Critical Element 1 was unacceptable as a whole. ID at 15-16.

¶10 On review, the agency disagrees with the administrative judge's findings concerning the survey cards, arguing that it proved the "essence of the charge," in that the appellant's retrieval of the cards from the recycling bin was contrary to its desire for her to cease hoarding materials. PFR File, Tab 1 at 25. We disagree. The examples listed in the PIP indicate that the agency was concerned with the appellant's alleged hoarding because it could result in keeping obsolete library materials and having inadequate space to grow the library collection with new materials. *See* IAF, Tab 9 at 171-72. We fail to see how the appellant's retrieval of the survey cards, which are not part of the library's collection, is contrary to these goals. We also note that the appellant's supervisor testified that, with the exception of three incidents, only one of which was listed in the proposal notice, the appellant disposed of materials "on a regular basis" during the PIP period.[5] Hearing Compact Disc (HCD 1) (Jan. 22. 2013) (supervisor's

---

[5] The agency contends that the administrative judge erred in failing to consider the two additional examples of hoarding, which were not listed in its proposal notice, but were discussed with the appellant during the PIP period. PFR File, Tab 1 at 22-23; *see* IAF, Tab 9 at 13, 34. However, the administrative judge's failure to mention all of the evidence of record does not mean that she did not consider it in reaching her decision. *See Marques v. Department of Health & Human Services*, 22 M.S.P.R. 129, 132 (1984), *aff'd*, 776 F.2d 1062 (Fed. Cir. 1985) (Table). Notably, the agency does not contend that it was precluded from introducing any evidence. In any event, even if the administrative judge failed to consider these additional instances, we discern no harm because they would not alter the outcome in this matter. *See Panter v. Department of the Air Force*, 22 M.S.P.R. 281, 282 (1984) (an adjudicatory error that is not prejudicial to a party's substantive rights provides no basis for reversal of an initial decision).

testimony). Therefore, we discern no basis to disturb the administrative judge's analysis.

¶11 The agency argues that the appellant's performance on the shelf shift project was not acceptable because she did not complete it largely independently, in that her supervisor had to tell her several times to fill the top shelves. PFR File, Tab 1 at 26-28. There does not appear to be any dispute regarding the appellant's repeated requests for clarification. However, the appellant's supervisor testified that the instruction to fill the top shelves was a departure from the way shelf shifts had generally been done in the past and that this particular shelf shift was "very unusual" because it involved removing three stacks and condensing the entire collection, which is not done regularly during a shelf shift. HCD 1 (supervisor's testimony). We find that the appellant's repeated questions about a new instruction regarding a basic function of her position do not indicate that she failed to complete a basic function of her position in a largely independent manner. We note that, before beginning the project, the appellant sent her supervisor an e-mail detailing what she believed she must do to properly complete the project. IAF, Tab 9 at 22. The appellant's supervisor responded with instructions that, with the exception of the issue regarding whether to fill the top shelves, essentially mirrored the parameters the appellant had set forth. *Id.* This suggests that, other than the new instruction, the appellant understood how to perform the shelf shift. Indeed, after the appellant completed the project, her supervisor sent her an e-mail stating that the "end result of this shift look[ed] excellent." *Id.* at 28.

¶12 The agency also contends, regarding the shelf shift, that the administrative judge misconstrued its "charge" (Improvement 4), in that she improperly inserted a "temporal element" when she considered that the appellant completed the project successfully by the deadline. PFR File, Tab 1 at 26, 28. We find this argument to be without merit. Again, this is not a chapter 75 case involving charges and elements of proof. In any event, we discern no error in the

administrative judge's referencing the deadline because, regardless of whether Improvement 4 included a temporal element, the appellant's supervisor set a deadline for her to complete the project.

¶13    The agency further argues that the administrative judge's finding that the appellant committed a serious error in discarding numerous newsletters contrary to her supervisor's instructions is sufficient to find that she failed Critical Element 1. *Id.* at 17-18, 21. In finding that the appellant's performance on the newsletter weeding project was not sufficient to find that her performance was unacceptable in Critical Element 1 as a whole, the administrative judge noted that, as to Critical Element 1, the appellant's supervisor "seemed most concerned with correcting the appellant's 'hoarding' than any other performance deficiency." ID at 15. The agency agrees with this finding. PFR File, Tab 1 at 24. The agency does not explain why, if the appellant's supervisor was most concerned with her alleged hoarding under Critical Element 1, her improper discarding of certain newsletters warrants a finding that she failed Critical Element 1 as a whole. Rather, the agency reiterates the seriousness of the error, which the administrative judge clearly considered in reaching her decision. *See* PFR File, Tab 1 at 20-21; *see also* ID at 15.

Critical Element 2

¶14    The agency found that the appellant failed Critical Element 2 (Effective Teamwork and Communication) because she did not satisfy Improvements 3, 5, and 6 set forth in the PIP. IAF, Tab 9 at 6-8. Specifically, the appellant was instructed to: (1) "follow instructions regularly the first time," with clarification available "when first given instructions" (Improvement 3); (2) "demonstrate attention to detail, alertness, and focus," including using effective communication skills, "following instructions correctly the first time, paying attention to details in [her] work, and completing tasks fully and correctly" (Improvement 5); and (3) perform routine tasks that are a normal part of her position without being

asked and show initiative and apply her extensive experience working in the library, and her 2 years of experience working with her current supervisor, to decide for herself the best course of action to take when given instructions or a task (Improvement 6). *Id.* at 175.

¶15    The agency found that the appellant failed to follow instructions the first time (Improvement 3) concerning the aforementioned newsletter weeding and shelf shift projects, as well as when she: (1) failed to determine how to cancel the library's subscription to Department of Energy publications ("SuDocs"); and (2) did not fully complete an assignment to record the beginning and ending call numbers and titles on each row for all library stacks because she admittedly failed to read her supervisor's instructions all the way through.[6] *Id.* at 6-8. The agency also found that the appellant did not show initiative (Improvement 6) because she took no action to correct the library's receipt of extra copies of the Federal Register and the Congressional Record, which had been occurring for 14 years and 20 years, respectively.[7] *Id.* at 8.

¶16    For the same reasons set forth under Critical Element 1, the administrative judge found that the appellant did not complete the newsletter weeding project properly but successfully completed the shelf shift project. ID at 16. The administrative judge found that the appellant attempted to find how to cancel the

---

[6] The proposing official also noted that the appellant put a publication request in the wrong mailbox and improperly completed an assignment to transfer her handwritten Code of Federal Regulations (CFR) records to a computer spreadsheet. IAF, Tab 9 at 7-8. However, the deciding official credited the appellant's claim that she properly completed the spreadsheet and found that the example of incorrectly placing a document in the wrong mailbox did not support a finding of unacceptable performance in Critical Element 2. *Id.* at 165.

[7] The agency also found that the appellant did not demonstrate attention to detail, alertness, and focus because she: (1) forgot to cover the front desk during her coworker's lunch break; and (2) kept a handwritten list of CFR check-ins, although she was required to keep the list updated electronically. *Id.* at 8. The administrative judge found that the agency failed to prove that the appellant failed to meet Improvement 5 during the PIP. ID at 18-19. The agency does not challenge this finding on review. PFR File, Tab 1.

library's SuDocs subscription and, therefore, followed instructions in that regard, notwithstanding the fact that she was unsuccessful in obtaining the information. ID at 16-17. The administrative judge also found that the appellant completed the call numbers project by the deadline after receiving clarification from her supervisor, as allowed under the Improvement. ID at 17-18. The administrative judge found that the appellant's failure to take action regarding the library's receipt of extra publication copies did not demonstrate unacceptable performance because the appellant had raised the issue with prior supervisors and had been instructed to continue as she had been; there was no evidence to support the appellant's supervisor's claim that the appellant was responsible for identifying wasted efforts in her GS-6 position; and the requirement to show initiative did not specify any particular task or action that the appellant was required to perform to demonstrate acceptable performance. ID at 20-21. Based on the foregoing, the administrative judge concluded that the agency did not prove by substantial evidence that the appellant's performance in Critical Element 2 was unacceptable as a whole. ID at 22.

¶17        On review, the agency argues that the administrative judge erred in finding that the appellant met expectations in Critical Element 2 and that it failed to prove that the appellant did not satisfy Improvements 3 and 6. PFR File, Tab 1 at 29-36. As to Improvement 3, the agency argues that: (1) the administrative judge improperly focused on whether the appellant completed the shelf shift project by the deadline, rather than whether she followed instructions the first time they were given; (2) the administrative judge's finding that the appellant failed to properly complete the newsletter weeding project warrants a finding that she failed the Critical Element as a whole; (3) notwithstanding the fact that the appellant timely completed the call numbers project, her performance of the project was initially incomplete because she admittedly failed to fully read her supervisor's instructions; and (4) the appellant's failure to determine how to cancel the SuDocs subscription by the deadline her supervisor established

constituted a failure to follow instructions. PFR File, Tab 1 at 29-32. We find these arguments to be without merit.

¶18 Although the appellant failed to follow instructions regarding the shelf shift the first time, in that she asked several times for clarification as to whether she should fill the top shelves, the agency has failed to explain why the fact that the appellant asked for clarification regarding a new instruction constitutes complete failure of Critical Element 2. The agency similarly has failed to explain why the appellant's performance on the call numbers project, which she completed fully and correctly by the deadline, warrants a finding that she failed Critical Element 2 as a whole simply because she initially turned in an incomplete work product. We also discern no error in the administrative judge's determination that, notwithstanding the appellant's failure to successfully locate the SuDocs information by the deadline, she complied with her supervisor's instructions by attempting to locate the information. ID at 16-17. As to the newsletter weeding project, the agency's mere disagreement with the administrative judge's finding that the appellant's performance was not deficient as a whole in Critical Element 2, notwithstanding this serious error, does not establish a basis for review. *See Broughton v. Department of Health & Human Services*, 33 M.S.P.R. 357, 359 (1987) (a petitioner's mere disagreement with issues already raised and properly resolved by the administrative judge below does not establish a basis for review).

¶19 Regarding Improvement 6, the agency argues that: (1) it was error for the administrative judge to consider the appellant's experience with past supervisors, including a past performance rating, because the Improvement required the appellant to apply her experience working with her current supervisor and her past ratings are irrelevant to her performance during the PIP; (2) the appellant's supervisor informed her that she should perform her duties in a manner that avoided waste and to bring wasteful practices to her supervisor's attention; (3) the administrative judge's finding that there was no showing that the

appellant's position required her to identify wasteful efforts misconstrued Improvement 6 because the Improvement did not require the appellant to identify waste, but, rather, the appellant's failure to identify waste demonstrated her failure to show initiative; (4) the administrative judge's finding that there was no evidence that the appellant initiated the wasteful practices is irrelevant to the charge because the agency did not allege that the appellant caused the problem; (5) the administrative judge erred in finding that Improvement 6 did not identify any specific task or action the appellant should take to perform acceptably under the Improvement; and (6) the administrative judge erred in finding that instructions in the PIP contradicted the agency's assertions regarding the appellant's performance under Improvement 6.  PFR File, Tab 1 at 33-35.

¶20		We find unpersuasive the agency's arguments regarding Improvement 6. Improvement 6 plainly stated that the appellant should apply her experience working with her current supervisor, as well as her "extensive experience working in the Library."  IAF, Tab 9 at 175.  Thus, we discern no error in the administrative judge's considering the appellant's customary practices, which were based on instructions she had received from prior supervisors.  Further, we find that it was proper for the administrative judge to reference the appellant's past performance appraisal.  Contrary to the agency's assertions, the administrative judge did not rely upon the appellant's past performance to conclude that she performed successfully during the PIP.  Rather, the fact that the appellant was previously rated as significantly exceeding expectations in Critical Element 2, while using the same processes that the agency now finds objectionable, lends support to the appellant's claim that she simply proceeded as sanctioned by her previous supervisors.  *See* ID at 21.  We also find it wholly relevant that the appellant's supervisor admonished the appellant for "second-guess[ing] [her] decision to throw something out," and stated that the appellant's job is not "to perform 'collection development' and determine which documents are marked for disposal," but, rather, "it is [the appellant's] job to discard items

when asked." ID at 21; IAF, Tab 9 at 171-72. It is unreasonable for the agency to expect the appellant to show initiative by raising issues previous supervisors had already told her not to be concerned with, particularly when the PIP instructed her not to question supervisory decisions regarding the discarding of materials.[8] Moreover, the record contains evidence of the appellant's showing initiative several times during the PIP. IAF, Tab 9 at 18 ("You caught something nobody else noticed . . . This was a good catch."), 28 ("I appreciated that you moved the newspapers from the back of the Library and incorporated them into the periodicals."), 35 ("You have taken the initiative to weed the *Congressional Records* based on our microfiche. That is good!").

¶21    Based on the foregoing, we AFFIRM the initial decision.[9] The agency has not established, by substantial evidence, that the appellant's performance was unacceptable in either Critical Element.

### NOTICE TO THE APPELLANT REGARDING YOUR FURTHER REVIEW RIGHTS

You have the right to request further review of this final decision.

Discrimination Claims:  Administrative Review

You may request review of this final decision on your discrimination claims by the Equal Employment Opportunity Commission (EEOC). *See* Title 5

---

[8] The agency argues that the administrative judge erred in failing to consider the deciding official's conclusion, not mentioned in the proposal notice, that the appellant also showed a lack of initiative because she claimed that she questioned her supervisor's instruction to discard periodicals as part of the weeding project but did not take any further action to ensure that it was appropriate to discard those materials. PFR File, Tab 1 at 33; *see* IAF, Tab 9 at 164. We reject this argument because, as previously explained, the administrative judge's failure to mention all of the evidence of record does not mean that she did not consider it in reaching her decision. *See Marques*, 22 M.S.P.R. at 132.

[9] We have not reviewed the administrative judge's findings concerning the appellant's discrimination claims because neither party challenges them. However, because this is a mixed case, we are providing the appellant with mixed appeal rights.

of the United States Code, section 7702(b)(1) (5 U.S.C. § 7702(b)(1)). If you submit your request by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit your request via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, NE
Suite 5SW12G
Washington, D.C. 20507

You should send your request to EEOC no later than 30 calendar days after your receipt of this order. If you have a representative in this case, and your representative receives this order before you do, then you must file with EEOC no later than 30 calendar days after receipt by your representative. If you choose to file, be very careful to file on time.

Discrimination and Other Claims:  Judicial Action

If you do not request EEOC to review this final decision on your discrimination claims, you may file a civil action against the agency on both your discrimination claims and your other claims in an appropriate United States district court. *See* 5 U.S.C. § 7703(b)(2). You must file your civil action with the district court no later than 30 calendar days after your receipt of this order. If you have a representative in this case, and your representative receives this order before you do, then you must file with the district court no later than 30 calendar days after receipt by your representative. If you choose to file, be very careful to file on time. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of

prepayment of fees, costs, or other security.  *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.


FOR THE BOARD:                    _____
                                  William D. Spencer
                                  Clerk of the Board

Washington, D.C.